

**FILED**
Nov 26 2014, 10:41 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**MARK F. CRINITI**
**PAUL EDGAR HAROLD**
LaDue Curran & Kuehn LLC
South Bend, Indiana

ATTORNEYS FOR APPELLEES
NATIONAL SALES COMPANY, INC., and
RODGER ANDERSON:

**REBECCA BUTLER POWER**
**AMBER J. BRESSLER**
Butler Power Law, P.C.
Elkhart, Indiana

ATTORNEYS FOR APPELLEES CAMCO
MANUFACTURING, INC., and NORM
GEIBLE:

**JAMES M. LEWIS**
**MARK D. KUNDMUELLER**
Tuesley Hall Konopa LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CRYSTAL VALLEY SALES, INC., CHARLES KLINE, and NANCY KLINE, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 20A04-1402-PL-83 |
| | ) | |
| JONATHAN ANDERSON, NATIONAL SALES COMPANY, INC., RODGER ANDERSON, CAMCO MANUFACTURING, and NORM GEIBLE, | ) ) ) ) ) | |
| Appellees-Defendants. | ) ) | |

**November 26, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Crystal Valley Sales, Inc. ("Crystal Valley")[1] appeals the trial court's dismissal of its civil conspiracy claims against National Sales Company, Inc., Rodger Anderson, Camco Manufacturing, Inc., and Norm Geible (collectively "Appellees") for failure to state a claim.[2] Crystal Valley contends that its amended complaint sufficiently states a claim against Appellees for civil conspiracy, and Appellees assert that a civil conspiracy allegation is insufficient absent an allegation of an underlying tort. Finding that Crystal Valley's amended complaint failed to sufficiently allege an underlying tort against Appellees, we affirm.

---

[1] Crystal Valley's majority shareholders Charles Kline and Nancy Kline are parties of record in the proceedings below and in this appeal. Ind. Appellate Rule 17(A). However, because the allegations in the amended complaint are framed on behalf of Crystal Valley as an entity and not in terms of the Klines in their individual capacities, we address the arguments accordingly.

[2] Jonathan Anderson is a party of record and participated in the proceedings below. Ind. Appellate Rule 17(A). Because Crystal Valley's claims against him were not part of the dismissal order, he is not participating in this appeal and did not file a brief.

**Facts and Procedural History**

The facts as alleged in Crystal Valley's amended complaint are as follows:

10. Crystal Valley warehouses and sells a variety of products to various OEM [original equipment] manufacturers in Elkhart, Indiana, including RV manufacturers, manufactured-home builders, cargo-trailer dealers, and marine-craft fabricators.

11. Crystal Valley's business is highly competitive without much product differentiation amongst competitors. As a result, Crystal Valley and its competitors rely significantly on the goodwill they generate through representative contact with their customers and suppliers and by keeping sensitive customer, supplier, and other business information confidential.

12. [Jonathan] Anderson began working for Crystal Valley in July 2002.

13. From July 2002 through June 30, 2007, J. Anderson served as a sales manager for Crystal Valley.

14. From July 1, 2007 through February 15, 2013, J. Anderson was Crystal Valley's Vice President and general Manager, and was also one of three shareholders in the company. J. Anderson is currently still an owner of Crystal Valley, holding a 5% percent [sic] interest in the company at all times since July 1, 2007.

15. At all times since July 1, 2007, the remaining 95% of Crystal Valley has been owned by Charles Kline and Nancy Kline.

16. As Crystal Valley's Vice President and General Manager, J. Anderson had contact with Crystal Valley's customers in the OEM industry, including, but not limited to, Keystone RV ("Keystone") and RV Surplus and Salvage, Inc. n/k/a RV Parts Nation ("RV Parts").

17. For many of Crystal Valley's customers, J. Anderson was Crystal Valley's primary sales representative and frequently worked at the customer's facility performing cycle-counting for the products that Crystal Valley sold to the customer.

18. Through his contacts with Crystal Valley's customers, J. Anderson generated goodwill between Crystal Valley and its customers while working for, and receiving compensation from, Crystal Valley.

3

19. Through his contacts with Crystal Valley's customers and also through his work as Crystal Valley's Vice President and General Manager, J. Anderson also learned confidential information about Crystal Valley's customers, including, but not limited to: contact information, product specifications, customer priority, buying patterns, rates of usage, payment history, and pricing information.

20. As Crystal Valley's Vice President and General Manager, J. Anderson also had contact with Crystal Valley's suppliers, including, but not limited to, Camco Manufacturing, Inc. ("Camco").

21. Through his contacts with Crystal Valley's suppliers, J. Anderson generated goodwill between Crystal Valley and its suppliers while working for, and receiving compensation from, Crystal Valley.

22. Through his contacts with Crystal Valley's suppliers and also through his work as Crystal Valley's Vice President and General Manager, J. Anderson also learned confidential information about Crystal Valley's suppliers including, but not limited to: supplier identity, net-pricing information, profit margins, and credit terms.

## The Employment Agreement

23. On July 1, 2007, Crystal Valley and J. Anderson entered into a Stock and Employment Agreement (the "Agreement"). …

24. Section 5 of the Agreement (the "Non-competition Provision") contains the following restrictive covenants against J. Anderson:

[Noncompete. During his employment and for one year thereafter, J. Anderson agrees not to engage directly or indirectly in competition with Crystal Valley by doing business or assisting another person or enterprise in soliciting any customer of Crystal Valley on behalf of another business or enterprise other than for Crystal Valley or by soliciting or placing orders with any of Crystal Valley's suppliers for critical products purchased by Crystal Valley from that supplier for the preceding twelve months.]

….

4

*While employed at Crystal Valley, J. Anderson diverted supplier Camco to his dad's company, National Sales*

26.     While still employed as Crystal Valley's Vice President and General Manager, J. Anderson diverted one of Crystal Valley's critical suppliers, Camco, to National Sales, for the purpose of competing against Crystal Valley.

….

28.     From November 2007 through February 1, 2013, Crystal Valley warehoused and sold Camco products to the OEM market in Elkhart, Indiana.

29.     During the entire period of Camco and Crystal Valley's business relationship, J. Anderson was Crystal Valley's primary contact with Camco.

30.     At all relevant times, J. Anderson's primary contact at Camco was Norm Geible.

31.     Since 2008, Norm Geible has known that J. Anderson had a non-compete agreement with Crystal Valley.

32.     During the time that Crystal Valley was distributing Camco's products, Norm Geible worked closely with J. Anderson.

33.     During the time that Crystal Valley was distributing Camco's products, J. Anderson regularly advised Norm Geible and Camco regarding improvements to Camco products.

34.     Norm Geible and Camco relied on J. Anderson's advice regarding improvements to Camco products.

35.     Norm Geible and Camco valued J. Anderson's input and advice regarding product developments and improvements.

36.     Norm Geible and Camco benefited from J. Anderson advising on new products form Camco.

37.     Through his relationship with Camco, J. Anderson generated goodwill with Camco on behalf of Crystal Valley, while working for, and being

5

compensated by, Crystal Valley.

38. Through his relationship with Camco, J. Anderson also learned confidential business information related to Camco, including, but not limited to, net-pricing information, profit margins, and credit terms.

39. From 2007 through 2012, Crystal Valley's sales of Camco products steadily increased.

40. Crystal Valley's sales of Camco products reached an all-time high in 2012.

41. On December 4, 2013, [sic] despite these increased sales, and while still under contract with Crystal Valley, Camco signed a distribution agreement with National Sales, which would become effective February 1, 2013.

42. National Sales is owned and operated by J. Anderson's father, [Rodger] Anderson.

43. Unlike J. Anderson, R. Anderson has no experience selling Camco products to the OEM industry in Elkhart.

44. On or about January 3, 2013, Camco notified Crystal Valley that Camco would be terminating Crystal Valley as its distributor.

45. After terminating Crystal Valley, Norm Geible solicited J. Anderson to advise on new and/or improved Camco products that Camco planned to sell through National Sales.

46. After terminating Crustal Valley, Norm Geible solicited J. Anderson to write down Crystal Valley's delivery schedule for the benefit of National Sales.

47. After terminating Crystal Valley, Norm Geible solicited J. Anderson to provide customer information for the benefit of National Sales.

48. Norm Geible solicited J. Anderson (as set forth in paragraphs 45-47 above) knowing that J. Anderson was an employee and shareholder of National Sales [sic].

49. Norm Geible solicited J. Anderson (as set forth in paragraphs 45-47

6

above) knowing that J. Anderson had a non-compete agreement with Crystal Valley.

50.     After learning that Camco had terminated Crystal Valley and would be switching to National Sales, and while still an employee and shareholder of Crystal Valley, J. Anderson advised Camco regarding new and/or improved products that Camco planned to sell through National Sales.

51.     After learning that Camco had terminated Crystal Valley and would be switching to National Sales, and while still an employee and shareholder of Crystal Valley, J. Anderson shared customer information with Camco, for the benefit of National Sales.

52.     J. Anderson actively diverted Camco to National Sales for the purposes of competing against his employer, Crystal Valley.

53.     J. Anderson, R. Anderson, Norm Geible, and Camco planned, conspired, and worked together to move Camco's business from Crystal Valley to its competitor, National Sales.

### *J. Anderson also sold and attempted to sell competitive products to Crystal Valley's current customers on behalf of National Sales*

54.     While employed with Crystal Valley, J. Anderson also sold and attempted to sell competitive products to Crystal Valley's current customers, RV Parts, for the benefit of National Sales.

….

56.     Crystal Valley sells RV Parts a variety of products, including but not limited to, tables, chairs, tire carriers, and scissor jacks.

57.     In or around the fall of 2012, while employed with Crystal Valley, J. Anderson, alongside his father, R. Anderson, sold tables and chairs to RV Surplus for the benefit of National Sales.

58.     From fall of 2012 up until his termination from Crystal Valley, J. Anderson, alongside his father, R. Anderson, also made multiple attempts to sell tire carriers to RV Surplus, for the benefit of National Sales.

59.     Upon information and belief, while still employed by Crystal Valley, J. Anderson sold and/or attempted to sell tire carriers and scissor jacks to

7

another Crystal Valley customer, Keystone, for the benefit of National Sales.

....

60. On Friday, February 15, 2013, Crystal Valley terminated J. Anderson.

....

64. On Sunday, February 17, 2013, J. Anderson eventually returned his company computer, phone, and iPad to Crystal Valley. By that time, however, J. Anderson had already wiped his phone and computer clean, ported his telephone number, and deleted Crystal Valley emails and other information from his work computer.

65. J. Anderson has diverted Crystal Valley's business and suppliers to National Sales.

66. By stealing Crystal Valley property and wiping his phone and computer clean, there is a real and substantial threat that, unless enjoined, J. Anderson will continue to divert Crystal Valley business and suppliers to National Sales and otherwise breach his contractual and other obligations to Crystal Valley.

67. By diverting Crystal Valley's business and suppliers to National Sales, J. Anderson has and will continue to cause Crystal Valley to lose business and has and will continue to damage Crystal Valley's goodwill.

68. The damage that Crystal Valley has suffered and will continue to suffer, especially to its goodwill and business reputation, is difficult, if not impossible, to calculate.

Appellants' App. at 73-75, 78-82.

The amended complaint designated four counts, three against Jonathan Anderson (for breach of contract, breach of fiduciary duty, and breach of loyalty) and one against all defendants (Appellees plus Jonathan Anderson) for civil conspiracy. Crystal Valley filed a petition for a temporary restraining order. After a hearing on the petition, the parties filed a

8

proposed agreed temporary restraining order, which the trial court granted.

Crystal Valley amended its complaint, and Camco and Geible filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. After Rodger Anderson and National Sales filed their responsive pleading, they filed a motion to dismiss under Trial Rule 12(B)(6) and a motion for judgment on the pleadings under Trial Rule 12(C).

The trial court held a hearing on the motions and issued an order in favor of Appellees, dismissing the complaint against them without prejudice. Crystal Valley filed a motion under Indiana Trial Rule 54, asking the trial court to enter final judgment on the dismissal. The trial court granted the motion, and final judgment was entered in favor of all defendants except Jonathan Anderson. Crystal Valley now appeals.

**Discussion and Decision**[3]

Crystal Valley challenges the trial court's dismissal of its claims against Appellees for failure to state a claim upon which relief can be granted. Because a Trial Rule 12(B)(6) motion to dismiss involves a pure question of law, we apply a de novo standard when reviewing a trial

---

[3] We note that in their briefs, both Crystal Valley and National Sales use footnotes rather than citation sentences to cite sources in contravention of Indiana Appellate Rule 22, which requires that parties adhere to Bluebook rules concerning citation form. *See* The Bluebook: A Uniform System of Citation R. B2, at 4 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010) ("In non-academic legal documents, citations appear within the text of the document as full sentences or as clauses within sentences directly after the propositions they support.").

court's grant or denial of the motion.[4] *Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1250 (Ind. Ct. App 2007).

> A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief. Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred. A court should accept as true the facts alleged in the complaint, and should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the non-moving party. However, a court need not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading.

*Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006) (citations and quotation marks omitted). In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 710 (Ind. Ct. App. 2001), *trans. denied* (2002). We need not accept as true conclusory, nonfactual assertions or legal conclusions. *Richards & O'Neill, LLP v. Conk*, 774 N.E.2d 540, 547 (Ind. Ct. App. 2002).

Crystal Valley submits that Appellees conspired with Jonathan Anderson to unlawfully divert business to its competitor National Sales. The amended complaint specifies only one theory of recovery against Appellees: "Count IV – Defendants' Civil Conspiracy." Appellants' App. at 86. "Civil conspiracy is defined as a combination of two or more persons [who take] concerted action[] to accomplish an unlawful purpose or to accomplish some

---

[4] We note that National Sales and Rodger Anderson also filed a motion for judgment on the pleadings pursuant to Indiana Trial Rule 12(C), to which we also apply a de novo standard of review. *Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co.*, 3 N.E.3d 1, 5 (Ind. 2014).

purpose, not in itself unlawful, by unlawful means." *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998). "[C]ivil conspiracy is not an independent cause of action." *Heyser v. Noble Roman's, Inc.*, 933 N.E.2d 16, 20 (Ind. Ct. App. 2010), *trans. denied* (2011). Rather, civil conspiracy must be alleged with an underlying tort. *Id*. Crystal Valley failed to do so in its amended complaint. Instead, its three remaining counts comprised allegations against Jonathan Anderson only, not against Appellees. Count I alleges that Jonathan Anderson breached his noncompete agreement; Count II alleges that Jonathan Anderson breached his fiduciary duty; and Count III alleges that Jonathan Anderson breached his duty of loyalty. Appellants' App. at 83-86. Appellees correctly assert that they were not parties to the noncompete agreement and that they did not otherwise owe a duty of loyalty or other fiduciary duty to Crystal Valley.

Relying on *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228 (Ind. 1994), Crystal Valley contends that its conspiracy claim is not dependent upon its pleading an underlying tort by each and every alleged conspirator. In *Winkler*, a discharged employee filed a contract action against his former employer and also alleged that the employer and its successor business engaged in a conspiracy to tortiously interfere with the employee's fifteen-year employment contract. *Id*. at 1230-31. Our supreme court affirmed a summary judgment order in favor of the defendants on the claims of civil conspiracy and tortious interference with a contract. In conducting its analysis, the *Winkler* court addressed the plaintiff's civil conspiracy and tortious interference allegations together, emphasizing that "civil conspiracy is not an independent cause of action." *Id*. at 1234.

Crystal Valley did not include an allegation that Appellees committed an underlying tort. Notwithstanding, it relies heavily on language tucked in a *Winkler* footnote contrasting the practical inability of a party to tortiously interfere with his own contract with the party's ability to *conspire* with others to tortiously interfere with his own contract. *Id*. at 1234 n.7 (citing *Wade v. Culp*, 107 Ind. App. 503, 508, 23 N.E.2d 615, 617 (1939)). However, the complaint must allege some unlawful act underlying the defendants' concerted action. In other words, it is not enough that the alleged conspirators acted in concert and that the result amounted to a breach of a contractual or fiduciary duty by one of them; rather, *Winkler* makes it clear that there must be some intentional underlying act of wrongdoing by each of the co-conspirators. This is not to say that each alleged conspirator must participate at an equal level, for rarely would that be the case in any conspiracy. Nevertheless, at a minimum, the plaintiff must put each defendant on notice of the unlawful act that he/she/it is alleged to have agreed to commit. In *Winkler*, the plaintiff specifically alleged that the defendants conspired to tortiously interfere with his employment contract, and our supreme court held that while the defendants did act in concert and while the result amounted to a breach of plaintiff's contract, tortious interference was not established because the plaintiff failed to show an absence of justification for defendants' actions. *Id*. at 1235-36.

As stated, here, Crystal Valley did not directly allege any underlying tort against Appellees in its four-count amended complaint. "Count IV – Defendants' Civil Conspiracy"[5] lists the following allegations:

---

[5] In the amended complaint, "Defendants" refers to Appellees plus Jonathan Anderson.

12

97.    Defendants worked in concert to unlawfully divert business from Crystal Valley to its competitor, National Sales.

98.    Defendants diverted business from Crystal Valley to its competitor, National Sales, by unlawful means.

99.    Defendants have committed civil conspiracy, which has caused and will continue to cause Crystal Valley damages.

Appellants' App. at 86-87.

On its face, Count IV not only fails to delineate the differences in positions among the various Appellees, but it also fails to specify the varying "unlawful" actions taken or means used by each Appellee.  For example, with regard to positions, National Sales and Rodger Anderson were never in privity of contract with Crystal Valley; Camco was a contracted supplier for Crystal Valley but had terminated its contract with notice before its contract with National Sales became effective.  Geible and Jonathan Anderson had been in a longstanding business relationship, whereas (until February 2013) Rodger Anderson's relationship with Jonathan appears to have been merely familial.

In attempting to ascertain whether the amended complaint as a whole raises factual allegations sufficient to state a claim for an underlying tort against Appellees, we note that Count IV incorporates by reference the allegations contained in the remainder of the amended complaint. As noted, Counts I through III allege breach of contract and breaches of fiduciary duty and duty of loyalty, all against Jonathan Anderson.  As between Crystal Valley and Appellants, privity of contract and fiduciary relationships were lacking.  Nevertheless, Crystal Valley appears to allege that the lack of contractual and/or fiduciary relationships is not an impediment to liability.

13

In other words, Crystal Valley contends that its civil conspiracy count is sufficient to state a claim that Appellees "helped" Jonathan Anderson breach *his* contractual and/or fiduciary duties to Crystal Valley. To the extent that the amended complaint bears some vestiges of a claim of tortious interference with Jonathan Anderson's noncompete agreement, we will examine the allegations against the required elements of tortious interference with a contract, which are: "(1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Guinn v. Applied Composites Eng'g, Inc.*, 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013) (citations omitted), *trans. denied* (2014).

In its dismissal order, the trial court found as follows with respect to tortious interference with a contract:

> [E]ven without a specific claim [of tortious interference with a contract], Plaintiff does not allege sufficient facts to support such a claim. Although Plaintiff alleges a valid contract and [Appellees'] knowledge of the contract, Plaintiff has not alleged the [Appellees'] intentional inducement of the breach of the contract or the absence of justification. Plaintiff alleges only that [Appellees] solicited information from [Jonathan Anderson] after Camco had terminated using Plaintiff. Further, Plaintiff's claimed damages is the loss of Camco business. Plaintiff's only allegations regarding [Appellees] here relate to after the Camco/Plaintiff relationship was terminated. Moreover, Plaintiff's allegations may be sufficient to allege conspiracy, but they lack the required underlying tort and are not sufficient to allege a tortious interference with contract.

Appellants' App. at 12.

We agree that the amended complaint sufficiently alleges that there existed between Crystal Valley and Jonathan Anderson a valid and enforceable employment contract which

14

contained a noncompete provision. With respect to Appellees' knowledge of the noncompete agreement, the amended complaint addresses only Geible (and, presumably vicariously, Geible's employer Camco). *See Id*. at 55, 57 ("30. At all relevant times, J. Anderson's primary contact at Camco was Norm Geible. 31. Since 2008, Norm Geible has known that J. Anderson had a non-compete agreement with Crystal Valley. …. 49. Norm Geible solicited J. Anderson … knowing that J. Anderson had a non-compete agreement with Crystal Valley."). Crystal Valley makes no similar allegation concerning any knowledge by Rodger Anderson (or, presumably vicariously, National Sales) about Jonathan Anderson's noncompete agreement. Instead, the amended complaint simply asserts that National Sales is owned and operated by Jonathan Anderson's father Rodger Anderson and that, unlike Jonathan, Rodger "has no experience in selling Camco products to the OEM industry in Elkhart," and it further asserts that "J. Anderson diverted supplier Camco to his dad's company." *Id*. at 55-56. These assertions do not amount to an allegation that Rodger Anderson had knowledge of Jonathan Anderson's noncompete agreement. *See Stocker v. Cataldi*, 483 N.E.2d 461, 463 (Ind. Ct. App. 1985) (mere family relationship insufficient to hold mother liable for son's actions where mother had no actual knowledge of son's intoxication when she entrusted vehicle to son), *trans. denied* (1986). In short, the allegations against Rodger Anderson and National Sales are seemingly based solely on the father/son relationship. Because there is no adequate factual allegation concerning their knowledge of the noncompete agreement, it follows that there is no allegation of intentional inducement to breach it.

15

With respect to whether Camco through Geible intentionally induced Jonathan Anderson to breach his noncompete agreement, we cannot piece together a sufficient factual allegation. The amended complaint simply avers, "J. Anderson, R. Anderson, Norm Geible, and Camco planned, conspired, and worked together to move Camco's business from Crystal Valley to its competitor, National Sales." Appellants' App. at 57. This allegation addresses conspiracy but does not address the requisite intentional inducement to breach a contract. Camco provided notice to Crystal Valley of its termination of their vendor agreement and, as such, was free to "move" its business as desired without contractual impediment. Thus, Crystal Valley failed to sufficiently allege that Camco's decision to move its business amounted to acting without justification in an attempt to intentionally interfere with Jonathan Anderson's contract.

To the extent that the allegation that Appellees "helped" Jonathan Anderson breach his fiduciary duties resembles a claim of aiding and abetting a fiduciary in the breach of a fiduciary duty, we note that Indiana does not recognize such a cause of action. *See DiMaggio v. Rosario*, 950 N.E.2d 1272, 1274 (Ind. Ct. App. 2011) (affirming trial court's grant of Rule 12(B)(6) dismissal on grounds that Indiana does not recognize a cause against third-party nonfiduciary for aiding fiduciary in breach of duty, but finding that even if such cause were recognized, complaint failed to sufficiently allege elements of underlying breach). We believe that the decision to adopt a new cause of action for aiding and abetting in the breach of fiduciary duty is a decision better left to the legislature or our supreme court. However, as the *DiMaggio* court noted, cases from jurisdictions that recognize such a tort require that the

nonfiduciary act knowingly or intentionally when joining the fiduciary in an enterprise constituting a breach of fiduciary duty. *Id*. at 1276. We find that the amended complaint does not sufficiently allege that Appellees acted with such knowledge or intent concerning Jonathan Anderson's fiduciary duties to Crystal Valley. As previously discussed, with respect to Appellees' knowledge concerning Jonathan Anderson's duties, whether contractual or fiduciary, the amended complaint alleges only that Geible was aware of Jonathan's noncompete agreement. It fails to allege knowledge by any of the Appellees (except possibly Geible)[6] concerning Jonathan Anderson's position as a Crystal Valley shareholder, and it likewise fails to allege that Appellees were aware of Jonathan's fiduciary duties attendant to that position. With respect to Rodger Anderson, we find no allegation that he knowingly or intentionally aided and abetted his son in breaching a fiduciary duty and note the complaint's allegation that Rodger was a novice in the business with no expertise as to the industry's workings. In short, we are left to infer knowledge and intent based solely on the father/son relationship. Thus, even if Indiana recognized such a tort, we find the allegations insufficient.

In sum, Crystal Valley's amended complaint fails to sufficiently allege against Appellees a recognized, underlying tort to accompany its civil conspiracy allegations as required by Indiana law. Thus, the trial court properly dismissed the action without prejudice pursuant to Indiana Trial Rules 12(B)(6) and 12(C). Consequently, we affirm.

---

[6] We note the following ambiguous allegation: "48. Norm Geible solicited J. Anderson (as set forth in paragraphs 45-47 above) knowing that J. Anderson was an employee and shareholder of *National Sales*." Appellants' App. at 57 (emphasis added).

17

Affirmed.

RILEY, J., and MATHIAS, J., concur.