FILED

Nov 15 2023, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

John E. Moriarity, Mae E. Moriarity, and C-A-R-E Auto Auction, Inc.,

*Appellants-Plaintiffs,*

v.

State of Indiana, Indiana Natural Resources Commission, and Indiana Department of Natural Resources,

*Appellees-Defendants*

November 15, 2023

Court of Appeals Case No. 22A-PL-2899

Appeal from the Grant Circuit Court

The Honorable Mark E. Spitzer, Judge

Trial Court Cause No. 27C01-1805-PL-17

**Opinion by Judge Weissmann**
Judges Riley and Bradford concur.

**Weissmann, Judge.**

[1] Nearly 30 years ago, John and Mae Moriarity built on their property a dam big enough to violate Indiana's Dam Safety Act.[1] After being ordered to either modify the dam or remove it, the Moriaritys sought compensation from the State for what they say will be attending damages—namely, a 30-to-40- acre mud pit and thousands of dead fish. This claim ignores the simple fact that the Moriaritys created the quagmire in which they find themselves and cannot now rely on the State to bail them out. Therefore, we affirm the trial court's dismissal of the Moriaritys' inverse condemnation action.

## Facts

[2] In the late 1990s, the Moriaritys built a dam that rose more than 20 feet in certain spots, creating a roughly 30-to-40-acre pond that contained over one hundred acre-feet of water. After learning about the dam, the Indiana Department of Natural Resources (DNR) ordered the Moriaritys to make changes, fearing safety deficiencies could cause the structure to burst and endanger nearby homeowners.

[3] The Moriaritys first litigated, and lost, a claim that their dam did not fall within the DNR's jurisdiction. *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 617-

---

[1] Ind. Code § 14-27-7.5 *et seq.*

18 (Ind. 2019). Our Supreme Court concluded that the Moriaritys must either modify the illegal dam to comply with the Dam Safety Act or remove it. [2]

[4] But while that case worked its way through the courts, the Moriaritys also pursued an inverse condemnation action. They claimed the DNR's action in forcing them to modify or remove their illegal dam constituted a regulatory taking that entitled them to just compensation. The trial court dismissed the Moriaritys' inverse condemnation complaint, finding that the facts "[did] not support a finding of a regulatory taking by the DNR." App. Vol. III, p. 47.

## Discussion and Decision

[5] On appeal, the Moriaritys claim they met the low bar necessary to survive dismissal of their inverse condemnation claim. A motion to dismiss under Indiana Trial Rule 12(B)(6) generally "tests the legal sufficiency of the plaintiff's claims, not the fact supporting it." *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017). A Trial Rule 12(B)(6) dismissal is reviewed de novo. *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 652 (Ind. Ct. App. 2014). Thus, the issue here is whether the Moriaritys' complaint alleged facts constituting a compensable regulatory taking. It did not.

---

[2] The Indiana Supreme Court affirmed a trial court's judgment, which itself affirmed the decision of the Natural Resources Commission, that the Moriaritys' dam violated the Indiana Dam Safety Act because it was an impermissible "high-hazard structure." *Moriarity*, 113 N.E.3d at 622-23 (citing Ind. Code § 14-27-7.5-8(b)).

### *Regulatory Taking*

Both Article 1, § 21 of the Indiana Constitution and the Fifth Amendment to the United States Constitution prevent the taking of private property for public use without "just compensation." These provisions "are textually indistinguishable and are to be analyzed identically." *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009).

Two types of regulatory action generally establish per se takings: (1) the permanent physical invasion of property; or (2) the deprivation of all or substantially all economic or productive use of an owner's property. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005). Outside of these "two relatively narrow categories," courts turn to the well-worn *Penn Central* factors. *Id.* (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). These factors require consideration of (1) the economic impact of the regulation, (2) the extent the regulation interfered with distinct investment-backed expectations, and (3) the character of the government action. *Id.* at 538-39.

Here, given that no physical invasion occurred, the Moriaritys largely allege the second category of a per se taking: the loss of all economic or productive use of their property. But even if such a loss occurred, the Moriaritys' claim fails because the government may affect a total regulatory taking without compensation where "'background principles of nuisance and property law' independently restrict the owner's intended use of the property." *Lingle*, 544 U.S. at 538 (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1026-32 (1992)).

[9] The Moriaritys never possessed a right to build an illegal dam. Therefore, they are not entitled to compensation because the State forced them to remove or modify it. This situation falls neatly within a category of regulatory cases identified by the United States Supreme Court as not deserving of just compensation. In *Lucas*, the petitioner purchased two beachfront lots that he intended for future residential use. 505 U.S. at 1007. But within a few years, the state of South Carolina enacted a law that effectively banned "any permanent habitable structures" from being built on his lots, which were within a beach erosion zone. *Id.* Under these circumstances, the Supreme Court found no compensable taking because "background principles" in the "law of property and nuisance" supported the state's right to place such restrictions upon land ownership. *Id.* at 1029.

[10] As an illustrative example, Justice Scalia pointed out that "the owner of a lake-bed . . . would not be entitled to compensation when he is denied the requisite permit to engage in a landfilling operation that would have the effect of flooding others' land." *Id.* This is true even where the "regulatory action may well have the effect of eliminating the land's only economically productive use" because the government action "does not proscribe a productive use that was *previously permissible* under relevant property and nuisance principles." *Id.* (emphasis added).

[11] The Moriaritys' situation mirrors Justice Scalia's example. The DNR is requiring the Moriaritys to fix or remove the dam because of the hazard it poses to them and their neighbors. To find for the Moriaritys here would be like

endorsing the lake-bed owner's unpermitted landfilling operation and then—once the threat of flooding arises—forcing the State to pay the owner to undo his own actions that created the danger in the first place. Such a result is absurd. Indeed, the "recognition that the Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed by those 'existing rules or understandings' is surely unexceptional." *Id.* Thus, the Moriaritys' complaint did not plead a per se regulatory taking.

[12] For similar reasons, the Moriaritys also failed to plead a regulatory taking under the *Penn Central* factors. First, under our standard of review, we assume as true the Moriaritys' claim that the dam's removal will cause them significant economic damages. Yet this injury is counterbalanced by the corresponding lack of any investment-backed expectations the Moriaritys should have had. Although the Moriaritys alleged their expectation that the dam would create a "thriving ecosystem" of fish and wildlife, Appellant's Br., p. 26 (citing App. Vol. II, p. 88), left entirely unmentioned is any reasonable expectation that they possessed the right to build a dam that violated Indiana's Dam Safety Act. And the Moriaritys would have been entirely wrong to simply assume their dam's legality. As the Supreme Court remarked in *Lucas*, a "property owner *necessarily expects* the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers." 505 U.S. at 1027 (emphasis added).

[13] Lastly, the character of the government action here supports finding no regulatory taking occurred. In regulating the Moriaritys' dam, the DNR is

acting to promote the common good and ensure public safety from the risk that a potentially deficient dam will fail and flood nearby landowners. These facts are the hallmark of a permissible government action. *See Duke Energy Ind., LLC v. Bellwether Props., LLC*, 192 N.E.3d 1003, 1009 (Ind. Ct. App. 2022) (finding no regulatory taking where government action "is intended to protect life and property").

[14] Because the Moriaritys' complaint did not successfully plead a regulatory taking, we affirm its dismissal.

Riley, J., and Bradford, J., concur.