

FILED

Oct 09 2025, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Pioneer Oil Company, Inc.,

*Appellant-Plaintiff*

v.

ECC Bethany, Inc., et al.,

*Appellees-Defendants*

---

October 9, 2025

Court of Appeals Case No.
24A-PL-2878

Appeal from the Vanderburgh Superior Court

The Honorable Thomas A. Massey, Judge

Trial Court Cause No.
82D07-2311-PL-5499

---

**Opinion by Chief Judge Altice**
Judges Pyle and DeBoer concur.

**Altice, Chief Judge.**

## Case Summary

[1] In May 2022, Pioneer Oil Company, Inc. (Pioneer) obtained a lease to produce methane from coal mine voids underlying a parcel of land in Gibson County (the Pioneer Leasehold Parcel). The coal mine has a tunnel (the Slope) that extends 1500 feet diagonally from the underground voids on the Pioneer Leasehold Parcel to the surface of an adjacent parcel that Gibson County Coal, LLC (GCC) occupied pursuant to a lease (the GCC Leasehold Parcel). GCC had previously used that tunnel for mining coal, but GCC abandoned its mining operations and sealed the Slope in 2020.

[2] Shortly after Pioneer obtained its lease, GCC entered into a methane lease agreement for the GCC Leasehold Parcel. GCC also entered into a project development agreement with ECC Bethany, Inc (ECC) to produce and capture methane by unsealing and repurposing the Slope through use of mechanical equipment.

[3] Pioneer filed suit against GCC and ECC (collectively, Defendants) seeking damages and a permanent injunction based on claims of trespass, conversion, and civil conspiracy. Pioneer claimed that Defendants' use and repurposing of the Slope amounted to an unpermitted directional well to siphon methane from the Pioneer Leasehold Parcel and that Defendants' actions interfered with Pioneer's ability to conduct its permitted operations and to exploit the mineral rights for which it bargained under its exclusive lease.

[4] Defendants sought dismissal of the complaint based on Ind. Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. After extensive briefing and argument, the trial court granted the motion to dismiss because Pioneer had not alleged that Defendants physically entered any portion of the surface or subsurface of the Pioner Leasehold Parcel and that, pursuant to the rule of capture, Pioneer could not have sole and exclusive ownership rights to uncaptured methane within the underground mining voids, including methane that Defendants were capturing through use of the Slope on the GCC Leasehold Parcel.

[5] On appeal, Pioneer presents the following issue for our review: Are the facts alleged in the complaint capable of supporting relief to Pioneer under any set of circumstances? Concluding that the trial court correctly applied the long-standing rule of capture, we affirm the dismissal order.

[6] We affirm.

## Facts[1] & Procedural History

[7] Coal mine methane is a combustible gas that exists naturally within coal seams. Underground coal mining causes methane to release and accumulate in the mine voids created when coal is removed. When underground mining activity ceases, passive venting is required to mitigate the buildup of coal mine

---

[1] For purposes of this appeal, we rely on the facts alleged in the complaint.

methane. Such venting typically consists of vertical vents in the mine voids where methane—which is lighter than air—can escape. Advancements in technology and environmental considerations have made the production of coal mine methane commercially viable, which has resulted in operators around the world, including in Indiana, producing methane from voids in abandoned underground coal mines.

[8] The Gibson North Mine, which exists below the surface of the Pioneer Leasehold Parcel, is an idled coal mine that contained the Springfield V seam of coal. GCC, as lessee and permittee, operated the Gibson North Mine through November 2019, when the commercially mineable coal within the Springfield V coal seam had been exhausted. During its coal mining operations, GCC constructed and used the Slope as a tunnel to transport materials to and from the underground mine to the surface. In May 2020, GCC sealed the coal mine, resulting in an abandoned permit status with the U.S. Mine Safety and Health Administration, although GCC's coal mining permit from the Indiana Department of Natural Resources (the DNR) remains in active status.

[9] On May 2, 2022, Pioneer, a corporation that drills and operates coal bed methane wells in Indiana, entered into an oil and gas lease with Heidenreich Farms, Inc. (Heidenreich), the owner of both the surface and mineral rights of the Pioneer Leasehold Parcel. Heidenreich granted Pioneer exclusive leasehold rights to develop and produce methane using the surface and the subsurface of the leased land. The lease provided in part:

Lessor … has granted, demised, leased and let and by these presents does grant, demise, lease, and let, exclusively unto Lessee within 800 feet of the surface for the purpose of exploring by geophysical and other methods, drilling (vertically, horizontally and directionally) and operating for, and producing coal bed methane (CBM), and coal mine methane (CMM) and their constituent products, injecting gas, waters, other fluids and air into subsurface strata, and with Lessor's consent, which consent will not be unreasonably withheld, laying pipelines, electric transmission lines, roads and structures thereon to produce, vent, flare, save, take care of, treat, process, store and transport gases, and their constituent products, together with the right of ingress and egress thereto or to other land under lease to Lessee, including the right of way and easement to lay, construct, use, maintain, operate, change, replace and remove pipeline or pipelines for such transportation with Lessor's consent, the [Pioneer Leasehold Parcel.]

*Appellant's Appendix Vol. 2* at 30. Pioneer recorded its lease on May 10, 2022, and then pursued permits from the DNR to drill and operate three wells, which descend into the coal mine voids in the Gibson North Mine so that Pioneer can extract and flare methane.

[10] On May 31, 2022, GCC entered into an agreement with Heidenreich and obtained a methane lease for the GCC Leasehold Parcel, which is where the Slope exits onto the surface of that parcel and is adjacent to the Pioneer Leasehold Parcel. The granting clause of this lease provided in part:

Lessor … does hereby grant, demise, lease and let exclusively unto Lessee all methane gas and its constituent products (hereinafter referred to as the "Methane") **contained within the underground mine voids in the Springfield V vein or seam of**

**coal and rock formations in communication therewith in and underlying [the GCC Leasehold Parcel]**, for the purpose of exploring for, drilling, operating, producing, flaring, and destroying such Methane, together with all mining rights, rights of ingress or egress and all other appurtenant easements and rights-of-way Lessor may hold to the surface of the [GCC Leasehold Parcel] ….

*Id*. at 37 (emphasis supplied). GCC recorded this lease on June 1, 2022.

[11] Around this same time, GCC entered into a project development agreement with ECC to produce and capture methane utilizing equipment provided by ECC. Instead of drilling a well vertically on the GCC Leasehold Parcel, Defendants unsealed and repurposed the Slope and used mechanical equipment to draw methane from the underground mine voids by artificially stimulating the flow of methane through the Slope and up to the surface of the GCC Leasehold Parcel. Defendants also sealed the vertical safety vents where the coal mine methane for the Gibson North Mine would naturally escape, causing methane to accumulate within the mine voids. Defendants continued these operations without applying for or receiving a permit for a gas well from the DNR.

[12] As set forth above, the Slope is a 1500-foot-long tunnel that originates on the surface of the GCC Leasehold Parcel and gradually descends and crosses the subsurface property line of the Pioneer Leasehold Parcel, ultimatley bottoming in the underground mine voids of the Gibson North Mine. The Slope does not

reach this gas reservoir until it is within the boundaries of the Pioneer Leasehold Parcel.

[13] On March 24, 2023, Pioneer filed suit against Defendants for injunctive relief and damages, asserting claims of trespass, conversion, and civil conspiracy. Pioneer alleged that the methane production mechanism employed by Defendants utilizing the Slope is "the functional equivalent of a directional or slant gas well by which Defendants have unlawfully accessed the Pioneer Lease and produced and converted to their own use and benefit the coal mine methane subject to the Pioneer Lease." *Id.* at 22. Pioneer claimed an "exclusive right to produce coal mine methane" from the gas reservoir on the Pioneer Leasehold Parcel. *Id.* at 23. Pioneer alleged that Defendants had refused demands to "restore the mine seal and cease the wrongful removal of coal mine methane subject to the Pioneer Lease[.]" *Id.* Pioneer asked the trial court to enter judgment in its favor permanently enjoining Defendants from "trespassing upon, and converting coal mine methane subject to, the Pioneer Lease," ordering Defendants to render an accounting "as to all coal mine methane produced using the Slope," and awarding treble damages, attorney fees, and statutory interest. *Id.* at 25-26.

[14] Defendants quickly filed T.R. 12(B)(6) motions to dismiss the complaint for failure to state a claim. After extensive briefing by the parties and an oral argument, the trial court dismissed Pioneer's complaint by written order on October 30, 2024.

Pioneer now appeals the dismissal order. Additional information will be provided below as needed.

## Standard of Review

We review a trial court's decision on a T.R. 12(B)(6) motion de novo and in doing so accept the facts alleged in the complaint as true and view all inferences in the light most favorable to the nonmoving party. *WEOC, Inc. v. Niebauer*, 226 N.E.3d 771, 774 (Ind. 2024). As our Supreme Court has observed, dismissal under this rule is "rarely appropriate", "appropriate only when it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." *Id*. (internal quotations omitted); *see also Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006) ("A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief.").

## Discussion & Decision

Pioneer argues that it sufficiently alleged facts in its complaint that could support claims of trespass, conversion, and conspiracy, and thus dismissal was improper. Boiled down, Pioneer contends that the allegations show: (1) Defendants had no right to invade the subsurface of the Pioneer Leasehold Parcel; (2) Pioneer had exclusive rights to extract methane from that parcel; and (3) Defendants used the Slope as "a directional gas well to siphon methane from the mine voids exclusively within Pioneer's parcel," which exceeded the

rights granted by GCC's methane lease, was done without a permit from the DNR, and interfered with Pioneer's exclusive rights. *Appellant's Brief* at 11.

[18] As will be discussed more fully below, we agree with the trial court that Pioneer's complaint failed to state a claim. The subterrain trespass claim is a nonstarter because Pioneer makes no allegation that GCC entered the Pioneer Leasehold Parcel to conduct its operations to extract methane through the Slope. And the rule of capture makes clear that Pioneer does not have sole and exclusive ownership rights to uncaptured methane gas beneath the Pioneer Leasehold Parcel, thus making its conversion claim untenable.

### 1. Trespass Claim

[19] To establish a trespass, a plaintiff must prove both that he possessed the land when the alleged trespass occurred and that the trespassing defendant entered the land without a legal right to do so. *Samples v. Wilson*, 12 N.E.3d 946, 950 (Ind. Ct. App. 2014). This case turns on the latter element, specifically whether Defendants physically encroached on the Pioneer Leasehold Parcel. *See id.* (finding no "physical encroachment" where defendant's dam was neither placed on plaintiff's property nor collecting and casting water on plaintiff's property).

[20] It has long been understood that one who "unlawfully **enters upon the land** of another person, and mines and removes therefrom coal, stone, sand, or other minerals, or cuts and removes therefrom growing timber, and converts such material or substance to his own use" is a trespasser. *Am. Sand & Gravel Co. v.*

*Spencer*, 103 N.E. 426, 427 (1913) (emphasis added); *see also Richmond Nat. Gas Co. v. Davenport*, 76 N.E. 525, 527 (1905) ("The taking of [natural gas] by a stranger by means of wells made [on plaintiff's land] without right for such purpose constitutes a trespass…."); *Campbell v. Smith*, 101 N.E. 89, 92 (1913) (observing that a lessee with the exclusive rights of gas and oil produced on a tract of land may enforce its rights against a trespasser who enters upon that tract and constructs wells thereon).

[21]    Here, there is no allegation that Defendants entered the Pioneer Leasehold Parcel or drilled upon that land; all indications are that Defendants' operations, including unsealing the Slope and installation of mechanical equipment, were performed exclusively on the GCC Leasehold Parcel. That is, Defendants captured methane utilizing the preexisting Slope without physically entering the Pioneer Leasehold Parcel.

[22]    Pioneer asserts that using the Slope in this way is "substantively no different than if GCC had drilled a *brand new directional well* into Pioneer's parcel without authorization."[2] *Appellant's Brief* at 14 (emphasis in original). In the context of

---

[2] Pioneer directs us to inapposite trespass cases that involve a neighboring property owner/lessee drilling a directional well into the property of another. *See Edwards v. Lachman*, 534 P.2d 670, 672 (Okla. 1974) ("[Defendants] drilled an oil and gas well at such an angle of deviation from the vertical that it bottomed in and produced hydrocarbons from formations underlying adjacent property. The drilling of this well into the adjacent property constituted a sub-surface trespass."); *Hastings Oil Co. v. Texas Co.*, 234 S.W.2d 389, 396 (Tex. 1950) ("Respondents allege, upon information and belief, that petitioners have trespassed upon their property by drilling into their subsurface and they allege facts which tend to support that belief."); *EQT Prod. Co. v. Crowder*, 828 S.E.2d 800, 802 (W. Va. 2019) ("The plaintiffs brought this lawsuit to challenge EQT's use of their surface estate to drill horizontal wells that extend under neighboring properties so that EQT can extract natural gas from beneath those properties.").

trespass, these two circumstances are entirely different. Drilling a brand new directional well into the subsurface of the Pioneer Leasehold Parcel without right would most certainly constitute a trespass. Defendants' operations accessing the Slope on the GCC Leasehold Parcel do not. The trial court properly dismissed the trespass claim.

## 2. Conversion Claim

[23] "[C]onversion is a tort involving appropriation of an owner's personal property to a tort-feasor's use and benefit. It occurs in exclusion and defiance of an owner's rights and under an inconsistent claim of title." *Plymouth Fertilizer Co. v. Balmer*, 488 N.E.2d 1129, 1140 (Ind. Ct. App. 1986), *trans. denied*.

[24] The rule of capture is a principle of oil and gas law that recognizes the migratory nature of oil and gas and provides that the first to capture (i.e., raise to the surface and sever from the earth) through operations on their own land becomes the owner of the captured natural resources. *See Finite Res., Ltd. v. DTE Methane Res., LLC*, 44 F.4th 680, 683 (7th Cir. 2022) ("The rule of capture permits an owner to extract gas from the owner's land, even if the oil and gas migrated from a neighboring tract, and even when extraction depletes a single pool or gas reservoirs lying beneath adjoining lands."). Indiana has a long history of applying this rule, as stated by our Supreme Court in 1905:

> It is settled by numerous decisions that the natural gas or the petroleum which may be under the surface, and not reduced to the actual possession of any person, constitutes a part of the land, and belongs to the owner thereof in such a sense that he has the exclusive right by operations upon his land to reduce such

mineral substance to possession and use and enjoyment and to grant the privilege of doing so to other persons, though, until so reduced to possession, the mineral substance is subject to be taken by any other person by proper operations upon his own land, and that a person in possession who has such exclusive right in particular land, as owner of the land or as lessee or grantee with the privilege of extracting such minerals, may by injunction prevent operations for such purpose by others who have not rightfully acquired the privilege from the owner of the land in fee.

*Davenport*, 76 N.E. at 527; *see also Campbell*, 101 N.E. at 95 ("It is well settled that appellees were not the owners of the oil in the earth…. The interest of appellees was the exclusive right to mine for oil on the premises."); *Foertsch v. Schaus*, 477 N.E.2d 566, 570 (Ind. Ct. App. 1985) (observing that a land owner "owns all of the oil beneath the surface of his acreage" but "only in a qualified sense" because of "the fugitive nature of oil, which can flow from and to adjoining lands"), *trans. denied*.

[25] Pioneer does not dispute that the gas being captured by Defendants roamed between their respective parcels through the Slope. Pioneer argues, however, that the rule of capture does not apply here because Defendants' operations on the GCC Leasehold Parcel are not proper. Specifically, Pioneer asserts that Defendants' operations (1) exceed the rights granted GCC in the lease between GCC and Heidenreich and (2) are being conducted without a DNR permit.

[26] As to Pioneer's first argument, we observe that Pioneer attempts to step into the shoes of GCC's lessor and enforce the terms of a lease to which Pioneer is not a

party. Pioneer does not explain to us how it has standing to do this. Regardless, Pioneer misinterprets GCC's lease, which granted GCC exclusive mining rights on the GCC Leasehold Parcel "for the purpose of exploring for, drilling, operating, producing, flaring, and destroying" methane gas and its constituent products "contained within the underground mine voids in the Springfield V vein or seam of coal and rock formations in communication therewith in and underlying [the GCC Leasehold Parcel]." *Appellant's Appendix Vol. 2* at 37. Defendants' operations on the GCC Leasehold Parcel, including the use of the Slope, were well within the broad mining rights granted GCC under the lease.

[27] For its second argument, Pioneer asserts that GCC failed to obtain a permit to operate the Slope as a gas well and thus Defendants cannot benefit from the rule of capture. Defendants strongly dispute that they were required to obtain a permit.[3] But we need not decide that question as Pioneer has not directed us to any legal authority establishing that the mere failure to obtain a permit renders the rule of capture inapplicable.

[28] In *Davenport*, our Supreme Court observed that until underground natural gas is reduced to someone's actual possession, it is "subject to be taken by any other person **by proper operations** upon his own land[.]" 76 N.E. at 527 (emphasis

---

[3] Ind. Code § 14-37-4-1 provides: "A person may not drill, deepen, operate, or convert a well for oil and gas purposes without a permit issued by the department." Defendants argue that the Slope does not constitute "a well for oil and gas purposes," which term is defined by Ind. Code § 14-8-2-317 as "a **well bore** drilled, deepened, or converted for any purpose for which a permit is required under IC 14-37" and includes a "coal bed methane well." (Emphasis added). "Well bore" is not statutorily defined, but Defendants argue that the Slope is not a well bore as that technical term is generally understood in the industry.

added). That case did not turn on whether there had been proper or improper operations on a neighboring parcel, and it said nothing about regulatory violations or their effect on the rule of capture. *Davenport* involved a landowner attempting to enjoin another from coming onto the landowner's land – trespassing – to drill gas wells under an oil and gas lease that had been improperly obtained from a life tenant. *See id.* (holding that life tenant did not have authority to operate for himself or grant or lease oil or gas rights to another and observing "[t]he fact that possibly, by the operations upon neighboring lands, all the gas will be taken before the remaindermen come into possession, cannot affect the right of the remaindermen to prevent the taking by the lessee or grantee of the life tenant.").

[29] Long ago our Supreme Court recognized the State's power to put limits on the rule of capture with regulations to prevent waste or destruction of adjoining landowners' common interests in a source of gas. *See Manufacturers' Gas & Oil. Co. v. Ind. Nat. Gas & Oil Co.*, 57 N.E. 912, 915-16 (Ind. 1900) ("[T]he manner of taking must be reasonable, and not injurious to or destructive of the common source from which the gas is drawn…. Hence it is that the legislative power … can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them of their privilege to reduce to possession, and to reach the like end by preventing waste."); *see also Finite Res.*, 44 F.4th at 684 ("[T]he doctrine of correlative rights also imposes a duty on owners not to waste natural resources intentionally or negligently as to injure their neighbor.").

[30] Waste is defined for purposes of I.C. 14-37 to include the following:

> (A) Locating, spacing, drilling, equipping, operating, or producing a well for oil and gas purposes drilled after March 13, 1947, in any manner that:
>
>> (i) reduces or tends to reduce the quantity of oil or gas ultimately to be recovered from any well in Indiana; or
>>
>> (ii) violates the spacing provisions adopted by the commission under IC 14-37.
>
> (B) Storing oil in earthen reservoirs except in an emergency to prevent the total loss of that oil.
>
> (C) Producing oil or gas in a manner that will cause water channeling or zoning.
>
> (D) Injecting fluids into a stratum or part of a stratum capable of producing oil or gas, except in accordance with the terms of a Class II well for which a permit is issued under IC 14-37.
>
> (E) Allowing water other than fresh water to flow from any producing horizon located in a producing pool, except in accordance with the terms of a permit issued under IC 14-37.
>
> (F) Allowing gas from a well that produces only gas to escape into the atmosphere, except as is necessary while making or changing connections, completing the well, or reconditioning the well.

I.C. § 14-8-2-302(2). The term expressly does not include "capturing and destroying coal bed methane for a commercial purpose, including the generation of carbon credits." I.C. § 14-8-2-302(3). Further, I.C. § 14-37-4-3 provides: "A permit does not convey to the owner or operator a property right or an exclusive privilege."

Pioneer has failed to allege or argue that Defendants have engaged in any waste or destruction of the common source of gas in this case, and Pioneer does not otherwise explain how Defendants' operations on the Slope are improper.[4] Under the circumstances, we hold that Pioneer cannot avoid the rule of capture based on the bare assertion that Defendants have not obtained a permit for operations on the GCC Leasehold Parcel. Further, as between Pioneer and Defendants, Pioneer does not have an exclusive right to the underground gas flowing between the two parcels and thus its conversion claim must fail. *Cf. Plymouth Fertilizer*, 488 N.E.2d at 1140 (holding that defendant only had surface

---

[4] Pioneer directs us to two cases from other jurisdictions for its proposition that regulatory violations negate the rule of capture, but neither of these cases supports this broad proposition, and both are distinguishable. In *Elliff v. Texon Drilling Co.*, 210 S.W.2d 558 (Texas 1948), the Texas Supreme Court confined its attention to "the sole question as to whether the law of capture absolves respondents of any liability for the negligent waste or destruction of petitioners' gas and distillate, though substantially all of such waste or destruction occurred after the minerals had been drained from beneath petitioners' lands. *Id*. at 560. The *Elliff* court held that respondent oil companies were liable for damages resulting from negligent drilling that caused the well to blow out, catch fire, and crater and caused waste or destruction of the oil and gas to which the petitioners, neighboring property owners, had correlative rights. *Id*. at 582-83 ("While we are cognizant of the fact that there is a certain amount of reasonable and necessary waste incident to the production of oil and gas to which the non-liability rule must also apply, we do not think this immunity should be extended so as to include the negligent waste or destruction of the oil and gas."); *see also Breton Energy, L.L.C. v. Mariner Energy Res., Inc.*, 764 F.3d 394, 409 (5th Cir. 2014) (observing that *Elliff* recognized that a landowner's regulatory noncompliance is relevant to waste claims and that the *Elliff* "opinion maintains the distinction between negligent waste (as evidenced by unlawful drilling) and drainage").

In *Wronski v. Sun Oil Co.*, 279 N.W.2d 564 (Mich. Ct. App. 1979), the other case cited by Pioneer, the defendant oil company had "systematically, intentionally and illegally [over]produced" from three wells in direct violation of a proration order issued by the Supervisor of Wells, Michigan Department of Natural Resources. *Id*. at 569. The express purpose of the proration order was to prevent waste, protect correlative rights, and provide for orderly development of the common pool of oil. *Id*. at 567. The *Wronski* court, recognizing that Michigan adheres to the "fair-share rule," held that "any violation of a proration order constitutes conversion of oil from the pool, and subjects the violator to liability to all the owners of interests in the pool for conversion of the illegally-obtained oil." *Id*. at 571 (footnotes omitted). Pioneer makes no allegation that Defendants' operations have violated any orders or regulations relating to waste or conservation of a pool of gas.

rights to the land and the right to use the gas well thereon for domestic use and thus defendant converted the gas when it used the well commercially, as plaintiff owned the gas and oil interests).

### 3. Conspiracy Claim

[32] A civil conspiracy claim is not an independent cause of action; it must be alleged with an underlying tort. *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct. App. 2014), *trans. denied*; *see also Birge v. Town of Linden*, 57 N.E.3d 839, 846 (Ind. Ct. App. 2016) ("[A]n allegation of civil conspiracy is just another way of asserting a concerted action in the commission of a tort.") (internal quotations omitted).

[33] Pioneer's conspiracy claim is based on the allegation that Defendants "acted in concert to accomplish the unlawful purpose of converting gas subject to the Pioneer Lease by means of an unlawful trespass." *Appellant's Appendix Vol. 2* at 25. Since Pioneer's underlying tort claims fail for the reasons set forth above, so too does the conspiracy claim.

[34] Judgment affirmed.


Pyle, J. and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Andrew W. Hull
Michael R. Limrick
Christopher D. Wagner
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Christoher E. Schaefer
Louisville, Kentucky

Kristen E. Hahn
Evansville, Indiana